JOSE GUILHERME *vs.* OLNEY & PAYNE BROS., INC.

JANUARY 24, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

CONDON, C. J. This is an employee's petition to review a preliminary agreement for workmen's compensation and a settlement receipt terminating payments thereunder. The case is here on the petitioner's appeal from a decree of the workmen's compensation commission which affirmed a decree originally entered by a single member of the commission denying and dismissing the petition.

The petitioner contends that the decree appealed from is erroneous for three reasons: First, because there is no legal evidence to support the holding "That the petitioner has failed to prove by a fair preponderance of the evidence that he had a return of incapacity on March 29, 1956, resulting in disability"; secondly, because said decree is not supported by any reasonable inference from the facts in evidence; and third, because it is against the law. The first and second reasons are substantially the same and raise a single question, namely, whether there is any legal evidence to support the decree.

It appears from the evidence that on September 28, 1955 petitioner received an injury arising out of and in the course of his employment with respondent which totally incapacitated him until January 9, 1956. A preliminary agreement awarding compensation during such total incapacity was entered into by the parties and was approved by the director of labor on November 2, 1955. The agreement originally described the location and nature of the injury as "Contusion crown of head, strain of neck." This was later amended by decree of the workmen's compensation commission to read "concussion of brain, acute strain of neck."

The petitioner returned to his regular work on January 9, 1956 and thereafter on January 13, 1956 he executed a settlement receipt in which he acknowledged that his incapacity ended on January 9 and receipt of compensation in full during the period of total incapacity. He worked regularly until March 29, 1956 when he voluntarily quit. There is a conflict in the testimony as to why he quit. He

claimed that it was because he could no longer do heavy work outside and that his doctor had advised him to get light work inside and avoid extremes of cold weather. The respondent's president and the yard superintendent testified that he decided to retire because he had reached the age of sixty-five and wished to avail himself of the benefits of social security. It is undisputed that he claimed and received his social security allowance after quitting respondent's employ.

On the day he received the injury petitioner was treated by his own physician, Dr. Joseph Seabra, and continued under such treatment until January 14, 1956 when Dr. Seabra discharged him and told him to return if his work aggravated his condition. Doctor Seabra testified that he never saw petitioner thereafter. It seems that he continued to work without making any complaints to anyone or receiving any further medical treatment until June 5, 1956 when he called on Dr. Thomas C. McOsker, a neurosurgeon, and placed himself under the doctor's care. At the time of the hearing before the commissioner Dr. McOsker was still treating him.

Doctor McOsker testified for petitioner and described the treatment he was giving. He diagnosed petitioner's condition at the time he first saw him as an acute neck strain, cervical osteoarthritis, probable congestion of the brain and some labyrinthitis. For further information on the last-mentioned condition Dr. McOsker referred petitioner to Dr. Richard Rice, an audiologist, for an examination. Doctor Rice testified that he found no signs of severe injury to the labyrinth. Notwithstanding Dr. Rice's findings Dr. McOsker testified that he still felt there was some indication of labyrinthitis. However, he admitted that even if there was it played only a minor part in petitioner's disability.

Apparently it was agreed that only petitioner's neck strain and dizziness were important factors in his case in connection with the injury he sustained at his employment.

Doctor McOsker expressed the opinion that the symptoms which petitioner complained of had been precipitated by and were causally related to the trauma of September 28, 1955. At the time he first examined petitioner on June 5, 1956 he felt that he had an acute injury which would be difficult to clear up and that it would probably be weeks before he could return to work.

Doctor Hannibal Hamlin, a neurosurgeon, examined petitioner on June 29, 1956. It was his opinion that he had sustained a concussion of the brain at the time of the accident but he based this upon petitioner's history of unconsciousness. He further testified that neither the pain in the neck nor the other effects of the blow on petitioner's head had disabled him, but rather that his physical disability was secondary to changes due to aging which thereafter turned petitioner's mind toward the idea of lighter work.

Much of the testimony of Dr. McOsker, Dr. Rice and Dr. Hamlin was based upon history given by petitioner in which there were significant omissions and which in some particulars did not jibe with each other. For example, although Dr. Hamlin based his opinion on petitioner's history of unconsciousness after the accident, Dr. McOsker testified that he understood from petitioner that he had suffered no loss of consciousness. Also petitioner failed to tell either Dr. McOsker or Dr. Hamlin that he had worked for fourteen weeks before quitting on March 29, 1956. Nor did he acquaint either of them with the fact that he had applied for and received his social security thereafter.

We have not recounted all of the testimony, but we think there is sufficient in what we have summarized above to show that there was a reasonable basis for the commission to draw the inference which it did, namely, that petitioner's evidence was lacking in credibility. The single commissioner who saw and heard the witnesses as they testified apparently did not believe petitioner's testimony that he

quit on March 29, 1956 because he could no longer do his regular work. On the other hand, he credited respondent's witnesses who testified that petitioner himself stated he was quitting in order to collect his social security. These are matters of fact finding which the statute vests exclusively in the workmen's compensation commission. What our opinion of the evidence may be is of no consequence. All that this court may do in the premises is to examine the record and decide if there is any evidence on which the commission's decree could reasonably be based. From our examination of the transcript we are satisfied that there is and therefore the petitioner's reasons of appeal are without merit.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Louis J. Perez*, for petitioner.

*Boss, Conlan, Keenan, Bulman & Rice, Francis W. Conlan*, for respondent.